The first case today is number 221695, Sandra St. John v. Merrick B. Garland. At this time, would the counsel for the petitioner please come to the table, come to the podium, and introduce himself on the record to begin. My name is Michael Ugolini. Good morning, Your Honor. This case presents the question of whether we should remove someone from the United States who presents overwhelming evidence that the crime that forms the basis of their removal, they are not guilty of. The case arises out of an assault in the middle of the night with hot cooking oil, alleged to have been perpetrated by this alien. She and the victim both had children with the same man, and she says that this woman blamed her for the assault to get back at her for, or was jealous of her because of her relationship with the same man she had a child with. Because the conviction is very old, the state court officials have been less than accommodating to the claim. They have tried to run out the clock on her, knowing that once she's removed from the United States, she'll have a very hard time trying to exonerate herself. So the case went to an administrative law judge because the judge who had heard the case had retired. This administrative law judge gave the government four months to respond to the motion, without so much as holding a conference and asking the attorneys what kind of time they needed, what the issues were, and then he assigned it to a junior judge. The junior judge, when the deadline came, gave the government another month to respond. All the time I was saying, you know, the woman's about to be deported. Mr. Ugolini. Yes, sir. Yes. Correct me if I'm wrong, but under the statute that Congress passed, isn't the issue that you need to address is whether the conviction, your client was convicted in a Massachusetts court, and isn't the issue whether that conviction is final? Yes, sir. And so your client was convicted. The court wouldn't set aside the conviction. The client appealed. The appeal was unsuccessful. Years later, your client filed, I think it was called the Rule 30 motion under Massachusetts law, and that was denied by the trial court, and you've now appealed that. Right. And you want us to say because of that pending appeal of the Rule 30 motion, your conviction is not final? Right. But one correction. The first appeal was to the merits of the conviction. It didn't involve newly discovered evidence that this victim, the fathers of her children were serial domestic abusers, and this woman's trial counsel never bothered to check out the fathers of her children. But I think now you're arguing the conviction was wrong or should be set aside. Yes, sir. But the issue now is, is the conviction final? It might be helpful with you. Yes, sir. Well, the Board of Immigration Appeals itself says in a case, it says collateral attacks that do not relate to the merits of the conviction will not be given effect to eliminate its finality. However, those that go to innocence do affect its finality, do forestall finality. Why would we want to remove someone from the United States to a country they have no connection with whatsoever when they're not guilty of the crime? Now, I know there's a limit on when we're going to say, well, your conviction is final now, but it doesn't prejudice anyone to give this woman a few more months to have her case heard by the Massachusetts Court of Appeals that we're hoping will do the right thing when the trial courts were more concerned with their docket than they were with this woman's guilt or innocence. That's the question. So the Board of Immigration Appeals – So are you asking us to say that her case is not final? Yes, ma'am, because the Board of Immigration – Because she made a claim of innocence in a Rule 30 motion? That's right, and filed a motion for a new trial, right, and that's still pending. And the Board of Immigration Appeals itself said this. So when she files a motion to reopen her immigration proceedings, the immigration judge stays her removal, says, I'm going to wait until this thing plays out. But district counsel kind of makes an end run around that and files a motion, she calls it a motion to vacate the stay, which is really a motion for reconsideration. But she doesn't comply with the rule on reconsideration where it says you have to allege something was wrong when the decision was made. There was an error in the facts or error in the law. She doesn't say that. She just says, why don't you take another shot at it? And the immigration judge does. Counsel. Counsel. Yes, ma'am. Please. Could you go back to the legal issue? The question before us is whether the BIA committed an error of law in saying that the conviction from years ago was final and is definitely final at this point. And you may want to argue the merits as though we were the state court on appeal, but that is not our role. So you want us to upset the finality rule because you say years later there is evidence which you say is newly discovered, which you say then permits a claim of actual innocence, which means that the finality rule gets set aside. Why would we ever want to do that? Well, Judge, because the BIA says you did it themselves. The BIA in this case cited in the brief, Inri Acosta, they say in it, appeals including direct appeals and collateral attacks that do not relate to the merits will not be given effect. Such appeals include those that relate only to the alien sentence or to seek to reduce the charges, to ameliorate the conviction for rehabilitative purposes or to alleviate immigration hardships that do not challenge the merits. Counsel. Counsel. Yes, ma'am. You were asked earlier if your argument is that the conviction is not final. You answered that affirmatively. That's the way I read your petition for review brief before us. You now seem to be making a different argument that the BIA erred in applying its own precedent, but the BIA obviously thought it did not commit any such error. So which argument are you making? Well, I think those arguments are the same. I mean, the argument is her conviction isn't final. And the Board of Immigration Appeals in its decision, it abuses its discretion when it dances around its own precedent and has blinders on and says, well, we're not going to look at any precedent that would result in reopening this case. Well, we don't know about J.M. Acosta. So one wonders if the commissioner who decided the case at the Board of Immigration Appeals, well, didn't he see J.M. Acosta? Isn't he supposed to know more about it than I do? So he doesn't see that case. So he cites 25- and 30-year-old cases that say once the hammer comes down and the judgment enters, the person's convicted and off they go. But that's not the law in a few of the circuits, even before this J.M. Acosta case. In some circuits, they've adopted the old-fashioned approach that says once you're convicted, you go. In other circuits, they say, well, if your case is on direct appeal, we'll let the appeal play out. And then what's left is something called collateral challenges. And collateral challenges fall into like two categories, it seems, like motions for a new trial, motions in arrest of judgment, or habeas corpus. And that's what this case is. It's a collateral challenge to a conviction. Well, let's follow that logic through. First, there is no case that says that such a collateral challenge renders the conviction non-final. That's correct, sir. There is a case that says certain collateral challenges don't do something, and you would draw a negative inference from that that other ones therefore do. Well, yeah, from what the BIA says in this case. It says if you're saying if you have to get a five-year sentence to get deported, and you get convicted and get a five-year sentence, and then you try to get the sentence changed, that's not going to change anything. And you'd therefore say, but if you're doing something else, it does change. That's right. If you're saying, well, I didn't commit the crime, that does change it. But you can file as many Rule 30 motions under Massachusetts law as you want, can't you? Yes, sir. At any time. At any time as well. Exactly. So if you're correct, if we were to adopt your ruling, no Massachusetts conviction would ever be final because you could just keep filing Rule 30 motions. I know, Judge. I know. There's a place where you have to draw the line to say this person's conviction is final and they get deported. So stay with us. What is the principle or rationale that you would address? The principle or rationale in this case. Listen to my question because you'll have a better shot at answering it. What's the rationale or principle that you put forward that says this type of collateral attack under Rule 30, saying I shouldn't have been convicted, renders it non-final, but another Rule 30 motion saying I shouldn't have been convicted for a different reason would not? How would we draw the line between one Rule 30 motion and two Rule 30 motions? Well, we could read their motion and they would say what the grounds are for their motion. Well, suppose all of them. She just kept filing Rule 30 motions that say I'm innocent. There are some decisions that talk about that problem and they say, well, we have to, you know, separate the wheat from the chaff like we do in all other cases. I mean, we're not stupid. We read what they said and we decide whether this is a challenge to their conviction that they're guilt or innocence or it's some other kind of a challenge to ameliorate the immigration hardships, to challenge the amount of time they got, to challenge where they're going to do their sentence. I mean, criminal defendants file these motions and challenge all kinds of things, but very few of them say I didn't commit this crime, and very few of them present the kind of evidence that this woman can present that she didn't commit the crime, that the woman's husbands were serial domestic abusers, that the victim had just broken up with one of them who had broken into her house at some point and started a fire, who threatened her. Mr. Euglena, I think your time is up unless my colleagues have any more questions. Thank you very much. Thank you, sir. Thank you, counsel, at this time. Counsel, for the respondent, please introduce yourself on the record to begin. Good morning, Your Honors, and may it please the Court, Elizabeth Dewar on behalf of the respondent, United States Attorney General. The Court should dismiss this petition for lack of jurisdiction because Ms. St. John has failed to raise a properly exhausted, colorable question of law or constitutional claim, which are the only types of issues this Court may address in light of the fact that Ms. St. John is subject to a criminal ground of removability. In the event the Court finds it does have jurisdiction, the Court should nevertheless deny the petition because the agency did not abuse its discretion when it denied Ms. St. John's motion to reopen. I would first like to discuss the jurisdictional issues this case presents and then discuss why, in the event this Court finds jurisdiction, Ms. St. John's claims nevertheless fail on the merits. Ms. St. John's primary claim before the Court is that the agency should have reopened her removal proceedings, again, because this criminal conviction underlying her removability, in her view, is no longer final. However, that is not an argument Ms. St. John made before the agency. But didn't the agency address it anyhow? No, Your Honor. I don't believe that sua sponte exhaustion has happened in this case. This Court has previously held sua sponte exhaustion has occurred in cases where an issue was squarely addressed by the Board and when the Board has provided a developed discussion of the issue. And while the Board did reference the continued finality of Ms. St. John's conviction, that was part of its assessment of why a stay of removal was not appropriate, not part of its discussion of why the motion to reopen was properly denied. But more importantly, it doesn't address the specific issue that Ms. St. John has presented to this Court, which is whether matter of J.M. Acosta stands for the proposition that the mere filing of a motion for post-conviction relief vitiates the finality of the underlying conviction for immigration purposes. And in fact, the Board noted in its decision that it was undisputed that Ms. St. John's conviction rendered her removable, which underscores the agency's understanding that this was not a live issue before it. So again, because I don't believe the agency sua sponte exhausted the issue, and Ms. St. John certainly did not, this Court lacks jurisdiction to review it in the first instance. Ms. St. John has similarly failed to exhaust her administrative remedies with respect to her allegation that the Board engaged in impermissible fact-finding. This Court's decision in Wan v. Holder requires a petitioner alleging impermissible fact-finding by the Board to first file a motion to reconsider with the Board in order to adequately exhaust their administrative remedies. Ms. St. John did not do so, and so this Court's jurisdiction is not properly invoked to resolve that issue in the first instance. Again, Ms. St. John has suggested that this Court overruled Wan v. Holder sub silencio with its decision last year in Barros v. Garland. However, that's not the case. Barros merely limited the scope of Wan v. Holder, and Ms. St. John's case remains firmly within that scope. In Wan, just as in Ms. St. John's case, the petitioner alleged that the Board made a finding of fact on an issue that the immigration judge didn't reach. Whereas in Barros, unlike this case, the Board made a finding of fact contrary to one the IJ had in fact made, and in doing so had applied the incorrect standard of review. And in that circumstance, this Court held that a motion to reconsider was not required. In this case, Ms. St. John has attempted to fit her case within the Barros category by alleging that the IJ made an implicit finding of equitable tolling in her order, and that the Board's statement in its decision that her motion was untimely is thus a contradictory finding of fact such that a motion to reconsider was not required. But the IJ did not make any implicit finding of equitable tolling or discuss timeliness in any way. So I don't believe that this case fits within the Barros category. The Court also lacks jurisdiction to consider Ms. St. John's argument that the agency premised its denial of her motion to reopen on an erroneous understanding of Massachusetts law because it does not raise a colorable legal issue. The agency's decision does not discuss Massachusetts law or whether her motion for a new trial is barred in Massachusetts, and so the finding that the petitioner takes issue with is simply not present in the record for this Court to review whether or not there's an error there. In the event the Court reaches the merits of Ms. St. John's arguments, her petition should be denied. Under the deferential abuse of discretion standard, the Court may only overturn the Board's denial of a motion to reopen if it's arbitrary, irrational, or contrary to law. And the agency's decision in this case was none of those things. Ms. St. John has argued that, again, returning to the merits, and again, in the event this Court reaches them, about the finality of her conviction, Ms. St. John argues that the evidence for pending motion for a new trial in state court would have changed the result in her removal proceedings unless they should have been reopened, because that pending motion means the conviction is no longer final. But again, the only legal authority that Ms. St. John cites for that proposition is the matter of J.M. Acosta, a 2018 decision of the Board, and J.M. Acosta does not support what Ms. St. John has asserted it does. Ms. St. John has rested her argument on essentially a single sentence from that decision, which states that, again, I think the petitioner read this, that appeals, including direct appeals and collateral attacks, that do not relate to the underlying merits of the conviction will not be given effect to eliminate the finality of the conviction. If we affirm the BIA's decision, which I think notes that the motion to reopen was untimely, would Ms. St. John be statutorily barred from reopening her case if that motion for a new trial were granted? Well, Ms. St. John would have to grapple with the number bar to motions to reopen. However, she could, again, as she urged this time, for the agency to exercise its sua sponte authority, or she could also request that DHS join her in her request to reopen. So she does still have an avenue in the event her conviction is in fact vacated and it is vacated based on a substantive or procedural defect to then seek reopening again. Again, there are statutory bars, but there is sua sponte authority to appeal to, and there's also the possibility, should DHS choose to, to join in a motion, in which case it's statutory. Counsel, let me see if I'm following the logic. If we were to dismiss the petition for lack of jurisdiction, wouldn't she still have to face the statutory bar because there would have been two motions to reopen, whether this court dismissed for lack of jurisdiction or not? Yes, Your Honor. If Ms. St. John were to file another motion to reopen, there is a number bar just as there is a time bar. Right. However, I believe, and I can certainly make a filing to the court exploring this, but I believe that both of those bars, if you still can seek sua sponte reopening, and I believe that a joint motion, if Ms. St. John were able to secure that, also the time and number bars do not apply to that. And what authority applies the number bar if the first filing is without jurisdiction? I'm sorry. Could Your Honor repeat that question? Sure. If we were to find that there's no jurisdiction for this court to consider this appeal, that would still mean the one shot was used up? Correct, Your Honor. And what authority do you point to that says that? It is the statute 1229A. I may have the court's brief indulgence. That just is the number bar, right? So under 1229AC7, capital A, an alien may file only one motion to reopen proceedings under this section, except that the limitation does not apply to prevent the filing of one motion to reopen described in C. Romanet 4. However, I believe it is under the regulations. Again, I won't belabor the point, but I can certainly make a filing with the court to answer that question more fully about her options if she were to file another motion to reopen, what bars she would face. But you're saying if we deny this appeal? Correct, Your Honor. And then three months later the Massachusetts courts are presented with new evidence, DNA, photograph, video, showing she clearly didn't do it and she's innocent, whether she could reopen would then be entirely up to the unreviewable discretion of DHS or the BIA. It would be a discretionary decision, just like all motions to reopen are, but it would be under the sua sponte authority, which is reviewable for errors of law or constitutional issues, which is what this court has held. So it's not entirely insulated from review, Your Honor. Are there any more questions for counsel? No. Thank you, Your Honors. That concludes argument in this case.